## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
### Atlanta Division

| | |
|---|---|
| COMMUNICATIONS INFRASTRUCTURE GROUP, LLC, AND BERLIN ATLANTIC CAPITAL, US, LLC, | ) ) ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) Case No.: ) |
| DANIEL H. RYAN, OLIVER SCHULZ, CATHRIN SCHULZ, AND COMMUNICATIONS INFRASTRUCTURE ASSET MANAGEMENT GROUP, LLC, | ) ) ) ) **JURY TRIAL DEMANDED** ) |
| Defendants. | ) ) ) |

## COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

Plaintiffs Communications Infrastructure Group, LLC, ("CIG") and Berlin Atlantic Capital, US, LLC ("BAC") by and through the undersigned counsel, hereby file this Complaint for Damages and Injunctive Relief against Defendants, Daniel H. Ryan, Oliver Schulz, Cathrin Schulz, and Communications Infrastructure Asset Management Group, LLC ("CIAMG"), and as the basis for the relief hereinafter sought, hereby state as follows:

## PARTIES

1.      Plaintiff Communications Infrastructure Group, LLC, ("CIG") is a limited liability company organized under the laws of the State of Delaware with its principal place of business at 5 Concourse Parkway, Suite 3100, Atlanta, Fulton County, Georgia 30328.

2.      Plaintiff Berlin Atlantic Capital US, LLC, ("BAC") is a limited liability company organized under the laws of the State of Delaware with its principal place of business at 5 Concourse Parkway, Suite 3100, Atlanta, Fulton County, Georgia 30328.

3.      Defendant Daniel H. Ryan ("Ryan") is an individual residing in the State of Georgia, County of Fulton, who may be served with process at his personal residence, 5111 Peachtree Dunwoody Road, NE, Atlanta, Georgia 30342.

4.      Defendant Oliver Schulz ("Schulz") is an individual residing in the State of Georgia, County of Fulton, who may be served with process at his personal residence, 3335 Chatham Rd., Atlanta, Georgia 30305.

5.      Defendant Cathrin Schulz is married to Defendant Oliver Schulz and is an individual residing in the State of Georgia, County of

Fulton, who may be served with process at her personal residence, 3335 Chatham Rd., Atlanta, Georgia 30305.

6.     Defendant Communications Infrastructure Asset Management Group, LLC ("CIAMG") is a limited liability company organized under the laws of the State of Delaware, with its principal place of business at 5 Concourse Parkway, Suite 3100, Atlanta, Fulton County, Georgia 30328. CIAMG may be served with process through its registered agent, National Corporate Research, LTC., at 615 S. Dupont Hwy., Dover, Kent County, Delaware 19901.

**<u>JURISDICTION & VENUE</u>**

7.     This Court has original jurisdiction of causes of action herein which are brought under the RICO Act of 1994 (18 U.S.C. §§1962-1968). *See* 18 U.S.C. §1965 (d).  This Court has ancillary jurisdiction over all other causes of action because they arise out of the same transactions, occurrences, and operative facts.

8.     This Court has jurisdiction over each of the Defendants pursuant to O.C.G.A. §9-10-91, because Defendants have committed various wrongful acts, including one or more of the following:

(a)     transacted "any business" within the State of Georgia within the meaning of O.C.G.A. §9-10-91 (1);

(b)     committed a tortuous act within the State of Georgia within the meaning of O.C.G.A. §9-10-91 (2);

(c )    conspired with other Defendants, which have themselves done acts sufficient to bring their co-conspirators within the long-arm jurisdiction of the Georgia courts pursuant to O.C.G.A. §9-10-91 and applicable law.

9.     Venue is proper in this district pursuant to 28 U.S.C. §1391(a)(2) and (b)(2), because a substantial part of the events giving rise to the claims made by CIG and BAC occurred in this judicial district. Alternatively, venue is proper in this district pursuant to 18 U.S.C. §1965 (b).

10.    This Court has personal jurisdiction over each of the Defendants as each has purposefully engaged in business activities in this District and has enjoyed the benefit of conducting commercially related activities within the Northern District of Georgia.

11.    This Court has subject matter jurisdiction and venue over this civil action as Ryan, Schulz, Cathrin Schulz, and CIAMG, acting either in concert, or individually, committed tortious acts or omissions within Fulton

County, Georgia, and the Northern District of Georgia, and a substantial part of the business, scheme and/or conspiracy occurred within Fulton County, Georgia and the Northern District of Georgia.

12.    In connection with the acts, conduct, and other wrongs alleged herein, Ryan, Schulz, Cathrin Schulz, and CIAMG, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mail, interstate telephone communications, and electronic mail.

## FACTUAL BACKGROUND

13.    CIG is a telecommunications infrastructure company headquartered in Atlanta, Georgia.  CIG has established a national footprint in the telecommunications industry through the development and acquisition of various communication assets, including wireless telecommunications towers, distributed antenna systems, and related facilities.  CIG presently holds assets throughout the United States.

14.    BAC is an independent international investment enterprise that focuses on investment opportunities in the U. S. telecommunications industry.  BAC has been the majority Managing Member of CIG, since CIG was formed in 2009.  BAC owns 85% of CIG.

15.    Ryan was employed by CIG in its Atlanta office in various capacities from the company's inception in 2007 until his termination from the company on December 6, 2010.   Ryan was a shareholder, Chief Executive Officer ("CEO"), and member of the Board of Managers of CIG.

16.    Since 2009, Ryan has been and still remains a 15% minority shareholder of CIG.

17.    In his multiple capacities at CIG, Ryan's responsibilities included, among other things, overseeing operations of CIG, approving acquisition and disposition of real estate assets, and developing and implementing corporate strategy.

18.    In addition to acting as CEO for CIG, Ryan also served as CEO of several entities affiliated with BAC.

19.    As a Chief Executive Officer and member of the Board of Managers of CIG, Ryan was in a relationship of trust and confidence with CIG and owed fiduciary duties and duties of loyalty and good faith to the company during and subsequent to his employment.

20.    Schulz served as CIG's President from approximately April 1, 2010 to December 6, 2010.

21.     Additionally, Schulz acted as CEO for BAC from April 1, 2010 to December 6, 2010, and Schulz served as CEO for other affiliated companies of both BAC and CIG.

22.     As a President of CIG and CEO of BAC, Schulz was in a relationship of trust and confidence with CIG and BAC and owed these entities fiduciary duties and duties of loyalty and good faith to both during and subsequent to his employment.

23.     In his multiple capacities at CIG and BAC, Schulz's responsibilities included, among other things, overseeing operations of CIG and/or BAC, approving acquisition and disposition of real estate assets, and developing and implementing corporate strategy for CIG, BAC and affiliated companies.

24.     On or about November 18, 2010, while Ryan and Schulz were employed with CIG, they formed, caused to be formed, or conspired in forming a new business entity, which they named Communications Infrastructure Asset Management Group, LLC ("CIAMG").

25.     Ryan and Schulz appointed themselves as Co-Managing Directors of CIAMG and represented that CIAMG's principal office was

located at Five Concourse Parkway, Suite 3100, Atlanta, Georgia, 30328, which is the same address and location as CIG's headquarters.

26.     At the time Ryan and Schulz formed CIAMG, they did not discuss the formation of CIAMG or disclose the nature of their relationship with CIAMG to anyone at CIG or BAC.

27.     To the contrary, Ryan and Schulz affirmatively worked to conceal their relationship and activities with CIAMG from those persons who could put a stop to their planned use of CIAMG as a vehicle for stripping CIG of its real property and lease assets, confidential information, funds, and other assets.

28.     Shortly after forming CIAMG and while they were still employees and officers of CIG, Ryan and Schulz attempted to transfer real property and lease assets, confidential information, funds, and other assets from CIG to CIAMG without CIG's or BAC's knowledge.

29.     Specifically, as evidenced by documents titled Assignment and Assumption of Real Property Lease, Ryan and Schulz transferred or attempted to transfer 30 or more real property and real property lease assets from CIG to CIAMG (the "Transfer Documents").  These assets include, but

are not necessarily limited to, the real properties and leases identified on Appendix A, attached to this Complaint.

30.    The Transfer Documents were dated November 30, 2010—just twelve (12) days after CIAMG was formed—and were prepared for signature by "Daniel H. Ryan, CEO" of CIG as assignor and by "Oliver Schulz, Managing" of CIAMG as assignee.

31.    The Transfer Documents fraudulently represent that Ryan, Schulz, CIG and CIAMG are authorized to make the 30-plus transfers indicated, and Ryan, Schulz, and CIAMG, acting from Atlanta, Georgia, used interstate wire and mail communications to represent to lawyers in New York and Maryland, that they had the authority to execute these transactions and to direct those lawyers to prepare the Transfer Documents.

32.    Further, Ryan and/or Schulz also set up new bank accounts at Wells Fargo in the name of CIAMG and transferred approximately $4.8 million dollars from CIG bank accounts to the new CIAMG bank accounts without the knowledge of CIG or BAC.

33.    In addition, Ryan also directed and/or caused certain employees of CIG to advance to his personal bank accounts unearned compensation and bonus payments in excess of $100,000.

34.    Upon information and belief, the improper transfer of funds was attempted both to enrich Schulz, and perhaps also Ryan, as well as for the purpose of putting CIG, BAC and/or their affiliated companies or subsidiaries into a position of technical insolvency in order to initiate or threaten bankruptcy as a scheme to blackmail the Plaintiffs.

35.    Based upon documents and information uncovered by CIG and BAC and upon other information and belief, CIG and BAC believe and allege that Ryan and Schulz initiated or caused to be initiated various transfers, and drafted or caused to be drafted various documents in preparations for transfers of valuable CIG assets to CIAMG.

36.    CIG and BAC also discovered that, in order to facilitate these deceitful and fraudulent asset transfers, Ryan and Schulz intentionally chose a name for their new company that is confusingly similar, indeed virtually identical, to CIG, and represented CIAMG as having the same address as CIG; thus creating the impression that they were executing approved inter-company asset transfers.

37.    Once CIG and BAC became aware of CIAMG's existence and of Ryan and Schulz's involvement with the company, Ryan and Schulz expressly denied any knowledge of, or relations to, CIAMG.

38.    Schulz also threatened to cause CIG, BAC or their affiliated companies or subsidiaries to file bankruptcy, without substantive grounds, and has refused sufficient and reasonable communications on this topic.

39.    In    investigating    these    fraudulent    and    unauthorized misappropriations and transfers, CIG and BAC became aware that Schulz, and perhaps also Ryan, had instructed the personnel working on CIG and BAC's information technology to create duplicate information files for Schulz's use, and Schulz has threatened or prepared to compete with CIG and BAC or their affiliates and/or subsidiaries using this confidential information.

40.    Effective December 6, 2010, CIG and BAC terminated employment of Ryan and Schulz in all manners and capacities in regards to CIG, BAC, and all other affiliated entities.

41.    Upon information and belief, on December 6, 2010, Cathrin Schulz, acting in concert with her husband and without proper authorization from CIG, took possession of various documents and confidential proprietary and trade secret information belonging to CIG and/or BAC.

42.    Shortly thereafter, when CIG representatives visited Schulz' residence to repossess corporate assets in Schulz's possession, including a

corporate car, CIG representatives found the house to be almost empty of personal belongings and furniture.

43.    On information and belief, Defendants Oliver and Cathrin Schulz have already fled or are preparing to flee this jurisdiction, possibly destined for Argentina, with their entire family.  On information and belief, Defendants Oliver and Cathrin Schulz have airline tickets to Buenos Aires, Argentina and are planning to leave the United States on Wednesday, December 15, 2010.

44.    Absent immediate injunctive relief, CIG is in danger of losing more than $20 Million in assets, as a result of the transfer of funds belonging to CIG and the execution of 30 or more separate Assignment and Assumption of Real Property Leases, which already may have been recorded in real property records in the following twelve states:  California, Florida, Indiana, Kansas, Maryland, Minnesota, Nebraska, North Carolina, Ohio, Pennsylvania, Virginia, and West Virginia.

45.    CIG further submits that there is not an adequate remedy of law available, and thus, pursuant to O.C.G.A. §9-11-65 a temporary restraining Order, Interlocutory Injunction, and Permanent Injunction should be granted ordering and requiring that the Defendants be restrained and enjoined from

transferring, conveying, selling, liquidating or otherwise disposing of CIG's assets.

## COUNT I – BREACH OF CONTRACT
### (AGAINST RYAN AND SCHULZ)

46.     CIG and BAC reallege and incorporate by reference each of the allegations made in this document.

47.     Ryan and Schulz, directly and/or impliedly, contracted with CIG to provide certain services to the company in exchange for compensation.

48.     Ryan and Schulz breached their contractual duties to CIG by, among other things, breaching the duty of good faith and fair dealing implied in their contracts; acting outside the scope of their authority in transferring money from CIG bank accounts to CIAMG bank accounts; acting outside the scope of their authority by assigning or attempting to assign CIG real estate leases to CIAMG; failing to place CIG's economic interests ahead of their own interests or the interests of CIAMG; and failing to properly and accurately perform their job duties for CIG.

49.     As a result of the actions of Ryan and Schulz in breaching their contracts with CIG, CIG has suffered and will continue to suffer irreparable harm and damages.

## COUNT II – BREACH OF FIDUCIARY DUTY
### (AGAINST RYAN AND SCHULZ)

50.    CIG and BAC reallege and incorporate by reference each of the allegations made in this document.

51.    Ryan, as Chief Executive Officer of CIG, and Schulz, as a President of CIG and CEO of BAC, owed CIG and BAC certain fiduciary duties, including duties of loyalty and good faith, which among other things, meant that they could not form a competing or related business entity during the course of their employment at CIG and/or BAC; that they could not perform duties for CIAMG while engaged as full-time employees by CIG and/or BAC; that they could not take and must not take for themselves any business opportunity that could benefit CIG or BAC; and that they could not transfer or attempt to transfer CIG assets or funds to CIAMG without a fair exchange of value in kind and prior explicit approval from CIG's Board of Managers.

52.    Ryan and Schulz breached their fiduciary duties of loyalty and good faith by, among other things, misleading or failing to inform CIG and BAC about their true relationship with CIAMG; failing to provide complete, accurate, and truthful information about CIAMG; performing duties for CIAMG while employed by CIG; by transferring or attempting to transfer

CIG assets and funds to CIAMG without a fair exchange of value in kind and without approval from CIG's Board of Managers, by running up debts and transferring funds in order to induce an artificial insolvency; and by threatening bankruptcy without substantive cause; all while still engaged as CIG officers.

53.   CIG would not have retained Ryan or Schulz as corporate officers had it known true, accurate, and complete information about the relationship between Ryan, Schulz, and CIAMG or Ryan and Schulz's plan to transfer assets and funds to CIAMG.

54.   Ryan and Schulz, who had superior knowledge of the true relationship with CIAMG, acted in bad faith in breaching their fiduciary duties and in failing to disclose relevant and material information to CIG.

55.   Ryan and Schulz further breached their fiduciary duties owed to CIG by improperly exercising authority in approving the transfer or attempted transfer of real property and lease assets, confidential information, funds, and other assets from CIG, BAC, and/or their subsidiaries and affiliates to CIAMG, even after being explicitly told to stop all such transfers or attempted transfers.

56.     By engaging in such activities, Ryan and Schulz have caused and continue to cause CIG and BAC to suffer damages, including, without limitation, deprivation of property and lost profits.

57.     Further, Ryan and Schulz have acted in bad faith, in a willful, knowing, malicious, oppressive and fraudulent manner, with the intent and purpose of advancing their own gain at the expense and to the detriment of CIG and BAC, and, as such, CIG and BAC are entitled to punitive and exemplary damages from them.

58.     As a direct and proximate result of the actions of Ryan and/or Schulz, CIG and BAC have suffered damages in an amount in excess of five million dollars, to be more specifically proven at trial.

## COUNT III– NEGLIGENT MISREPRESENTATION
### (AGAINST RYAN AND SCHULZ)

59.     CIG and BAC reallege and incorporate by reference each of the allegations made in this document.

60.     During the course of their employment with CIG, Ryan and Schulz made numerous misrepresentations and omissions of material fact contrary to legal and equitable duties, including those duties imposed by trust or confidence.

61.    Ryan and Schulz knew, or with reasonable care, should have known that these misrepresentations and omissions of material fact were materially misleading and inaccurate and did not provide CIG and BAC with a full and accurate disclosure of material information regarding the existence of CIAMG, their relationship with CIAMG, and the transfer of assets and funds to CIAMG.

62.    Such misrepresentations and material omissions were made for the purpose of inducing CIG to allow Ryan and Schulz to remain in their positions of confidence with CIG so that Ryan and Schulz could complete their scheme to transfer assets and funds from CIG to CIAMG.

63.    CIG and BAC justifiably relied on said misrepresentations and material omissions in retaining Ryan and Schulz as CEO and President of CIG respectively.

64.    Had CIG and BAC known that the representations made by Ryan and Schulz were false, or that Ryan and Schulz had created CIAMG and intended to transfer various assets and funds from CIG to CIAMG, they would have immediately terminated Ryan and Schulz and revoked their authority to act on behalf of CIG.

65.     As a direct and proximate result of the actions and conduct of these Defendants, CIG and BAC have suffered and will continue to suffer damages in an amount in excess of five million dollars, to be specifically proven at trial.

### COUNT IV – FRAUD
### (AGAINST RYAN, SCHULZ, AND CIAMG)

66.     CIG and BAC reallege and incorporate by reference each of the allegations made in this document.

67.     As set forth with particularity above, Ryan and Schulz, acting in concert with one another and on behalf of CIAMG, made numerous misrepresentations and omissions of material fact contrary to legal and equitable duties, including those duties imposed by trust or confidence.

68.     Ryan and Schulz knew at the time they were making such statements that their misrepresentations and omissions of material fact were materially misleading and inaccurate and did not provide CIG with a full and accurate disclosure of material information regarding the existence of CIAMG, their relationship with CIAMG, and the transfer of real property and lease assets, confidential information, and funds to CIAMG.

69.     Such misrepresentations and material omissions were made for the purpose of fraudulently inducing CIG to continue employing Ryan and

Schulz so that Ryan and Schulz could complete their scheme to transfer assets from CIG to CIAMG.

70.    CIG justifiably relied on these misrepresentations and material omissions in retaining Ryan and Schulz as employees and allowing them access to the assets that were misappropriated.

71.    Had CIG and BAC known that the representations made by Ryan and Schulz were false, or that Ryan and Schulz had created CIAMG and intended to transfer various assets and funds from CIG to CIAMG, they would have immediately terminated Ryan and Schulz and revoked their authority to act on behalf of CIG.

72.    These actions constitute statutory fraud and deceit by omission under O.C.G.A. § 23-2-53.   These actions also constitute statutory fraud, whether actual or constructive, under O.C.G.A. §§ 23-2-51, 23-2-52.

73.    These actions also constitute common law fraud.

74.    As a direct and proximate result of the actions and conduct of Ryan,  Schulz, and CIAMG, CIG has suffered and will continue to suffer damages in an amount in excess of five million dollars, to be specifically proven at trial.

**COUNT V – FEDERAL RICO**
**(AGAINST ALL DEFENDANTS)**

75.    CIG and BAC reallege and incorporate by reference each of the allegations made in this document.

76.    Plaintiffs are, and at all times material herein have been, limited liability companies duly created and organized in Delaware, and maintaining a principal place of business within the City of Atlanta, County of Fulton, State of Georgia.  Plaintiffs are engaged in activities affecting federal interstate and/or foreign commerce.  Thus, each of CIG and BAC is a "person," as that term is defined pursuant to 18 U.S.C. §1961 (3) of RICO.

77.    Defendant CIAMG, since its inception and at all times material herein, is and has been a limited liability companies created and organized in Delaware, and maintaining a principal place of business within the City of Atlanta, County of Fulton, State of Georgia.  CIAMG is likewise engaged in activities affecting federal interstate and/or foreign commerce.

78.    Defendants Ryan, Schulz, and Cathrin Schulz are, and all times material herein have been, natural persons residing and/or doing business within the City of Atlanta, County of Fulton, State of Georgia, and engaged in activities affecting federal interstate and/or foreign commerce.

79.    Defendants Ryan and Schulz conducted and/or participated, directly or indirectly, in the conduct of CIG and CIAMG affairs and in the

alleged schemes to rest control of CIG in such a fashion as to steal the assets of CIG and BAC through their management positions.  Defendant Cathrin Schulz conspired in, conducted and/or participated, directly or indirectly, in the conduct of the alleged schemes to steal the assets of CIG and BAC through her position as Schulz' spouse and as the owner or part owner of shell entities set up to further the scheme.

80.    The Transfer Documents fraudulently represent that Ryan, Schulz, CIG and CIAMG are authorized to make the 30-plus transfers indicated.  Ryan, Schulz, and CIAMG, acting from Atlanta, Georgia, used interstate wire and mail communications to fraudulently represent to lawyers in New York and Maryland, that they had the authority to execute these transactions and to direct those lawyers in preparing and transmitting the fraudulent Transfer Documents.

81.    These fraudulent communications and transactions occurred through interstate wire and mail in October, November, and December 2010, between CIG and CIAMG's Atlanta offices, Ryan and Schulz' Atlanta residences and the law offices of Jones Ferradino in Saratoga, New York and of Ober Kaler LLP in Baltimore, Maryland.

82.     Preparation and use of the Transfer Documents were part of the scheme of Ryan, Schulz, CIAMG and Cathrin Schulz and the interstate wire and mail communications were for the purpose of executing the scheme to defraud CIG and BAC.

83.     The transfer of funds described in the factual allegations above were by wire transfer and likewise involved mail and wire fraud, being based on the fraudulent misrepresentations of Schulz, CIAMG, and/or Ryan that they had authority or lawful reason to make or accept the transfers of funds from CIG and BAC-affiliated entities to CIAMG.

84.     Defendants acted with specific intent to defraud CIG and BAC by these fund transfers, the Transfer Documents, and the related wire and mail transmissions by acting with a specific intent to deceive CIG, BAC, bank officials, and the New York and Maryland lawyers and to cause pecuniary loss to CIG and BAC while bringing about financial gains for the Defendants, Schulz, Ryan, CIAMG,and Cathrin Schulz.

85.     Directing preparation of the 30-plus Transfer Documents, the 30-plus transactions contemplated in the Transfer Documents, the five or more transfers of funds, and the payment to themselves of stolen funds constituted fraud, mail and wire fraud, and bank fraud (see, e.g., 18 U.S.C.

§§ 1341, 1343, and 1344), amounted to monetary transactions in property derived from theft (see 18 U.S.C. § 1957), constitute a pattern of racketeering activity, and, but for the action of this Court, are activities likely to continue as part of the ongoing conspiracy to wrest unlawful control of CIG and to denude CIG and BAC of their business and property.

86.   The actions of  Schulz, Ryan, CIAMG, and Cathrin Schulz were agreed activities directed at defrauding CIG and BAC, and constitute a RICO enterprise.   The RICO enterprise includes their illegal use of the legal entities, CIG and CIAMG, and also the nonlegal entity that is their group of persons associated for the common purpose of engaging in racketeering conduct. Schulz and Ryan, CIAMG, and Cathrin Schulz acted in agreement and mutually directed and controlled these racketeering activities.

87.   As to the unauthorized transfers of funds to CIAMG, each of the Defendants knowingly engaged or attempted to engage in a monetary transaction; which each Defendant knew involved property or funds that were the proceeds of (their own) criminal activity; the property had a value of more than $10,000; the property was in fact proceeds of theft by wire and fraudulent transfer; and the transaction took place in the United States. Accordingly, the Defendants engaged in money laundering.

88.     Accordingly, CIG and BAC seek relief under the RICO Act of 1994 (18 U.S.C. §§1962-1968) including all damages, treble damages, costs, expenses and attorneys fees.

### COUNT VI – GEORGIA RICO
### (AGAINST ALL DEFENDANT)

89.     CIG and BAC reallege and incorporate by reference each of the allegations made in this document.

90.     The actions of Ryan, Schulz, Cathrin Schulz and CIAMG constitute a violation of O.C.G.A. § 16-14-4, which among other things, makes it unlawful for Defendants to either acquire money or to conspire to acquire money by participating in a pattern of racketeering activity.   Each of the Defendants participated in or conspired in at least two of the accomplished or attempted unlawful transfers and the related interstate fraudulent communications.

91.     In furtherance of their scheme to defraud CIG, Ryan, Schulz, Cathrin Schulz, and CIAMG conducted and/or participated in a systematic and ongoing pattern of racketeering activity that consisted of acts of: (1) mail fraud in violation of 18 U.S.C. § 1341; (2) engaging in monetary transactions in property derived from specific unlawful activities in violation of 18 U.S.C. § 1957; (3) theft by deception in violation of O.C.G.A. § 16-8-

3; and (4) theft by taking in violation of O.C.G.A. § 16-8-2.   Each such act of racketeering activity had similar purposes, involved the same or similar participants and methods of commission and had similar results impacting CIG in this action, and thus constituted a "pattern of racketeering activity" under Georgia law.

92.   Ryan, Schulz, Cathrin Schulz, and CIAMG committed, attempted to commit, conspired to commit, or aided and abetted the commission of the crime of mail fraud in violation of 18 U.S.C. § 1341 by, having devised a scheme or artifice to defraud, or for obtaining money by means of false or fraudulent pretenses, representations, promises, knowingly transmitted, or caused to be transmitted, by means of the mail, certain writings for the purpose of executing the scheme or artifice to defraud.

93.   Specifically, Ryan, Schulz, Cathrin Schulz, and CIAMG committed, attempted to commit, conspired to commit, or aided and abetted the commission of the crime of mail fraud in violation of 18 U.S.C. § 1341 by, having devised a scheme or artifice to defraud, or for obtaining money by means of false or fraudulent pretenses, representations, promises, knowingly transmitting or causing to be transmitted money by means of the

mail in interstate commerce in furtherance of the scheme or artifice to defraud.

94.    Additionally, Ryan, Schulz, Cathrin Schulz, and CIAMG committed, attempted to commit, conspired to commit, or aided and abetted the commission of the crime of theft in violation of O.C.G.A. § 16-8-2 by unlawfully taking or, being in lawful possession, unlawfully appropriating CIG's property with intent to deprive CIG of said property.

95.    Ryan, Schulz, Cathrin Schulz, and CIAMG also committed, attempted to commit, conspired to commit, or aided or abetted the commission of the crime of theft by deception in violation of O.C.G.A. § 16-8-3 by obtaining property by deceitful means or artful practice with the intention of depriving CIG of the property.

96.    As a direct and proximate result of the actions of Ryan, Schulz and CIAMG, CIG and BAC have suffered damages and will continue to suffer damages in an amount in excess of five million dollars, to be more specifically proven at trial.

97.    Furthermore, under O.C.G.A. 16-14-4, CIG and/or BAC are entitled to trebling of any actual monetary damages.

## COUNT VII – DECEPTIVE TRADE PRACTICES
### (AGAINST RYAN, SCHULZ, AND CIAMG)

98.    CIG and BAC reallege and incorporate by reference each of the allegations made in this document.

99.    Ryan, Schulz and CIAMG have engaged in deceptive trade practices by representing to CIG and CIG's clients that no relationship existed between Ryan, Schulz and CIAMG.

100.   Ryan, Schulz and CIAMG have engaged in deceptive trade practices by engaging in conduct that creates a likelihood of confusion and/or misunderstanding regarding the relationship between Ryan, Schulz and CIAMG.

101.   CIG has been damaged by the conduct of Ryan, Schulz and CIAMG in that the deception of these defendants has resulted in increased project costs, project delays, misappropriation of resources, and lost profits.

102.   As a direct and proximate result of the conduct of Ryan, Schulz and CIAMG, CIG has been damaged and continues to suffer damage and irreparable harm.

103.   CIG is entitled to an injunction, damages, and attorneys' fees in an amount in excess of five million dollars, to be more specifically determined at trial.

## COUNT VIII – UNJUST ENRICHMENT

**(AGAINST ALL DEFENDANTS)**

104.   CIG and BAC reallege and incorporate by reference each of the allegations made in this document.

105.   As set forth in detail herein, Ryan, Schulz, Cathrin Schulz, and CIAMG have wrongfully and without justification taken CIG's property by deceitful means, and artful practice and have been unjustly enriched as a result thereof.

106.   It is unconscionable and unjust for Ryan, Schulz, Cathrin Schulz,  and CIAMG to retain these benefits, which have been obtained at CIG's expense and to CIG's detriment.

107.   As a direct and proximate result of the actions and conduct of Ryan, Schulz, Cathrin Schulz, and CIAMG, CIG has suffered and will continue to suffer damages in an amount  in excess of twenty million dollars, to be proven at trial.

108.   Under these circumstances, it would be inequitable, unfair, and unjust for Defendants to retain this benefit.

## COUNT IX – CONSTRUCTIVE TRUST
**(AGAINST ALL DEFENDANTS)**

109.   CIG and BAC reallege and incorporate by reference each of the allegations made in this document.

110. As set forth with particularity above, Ryan, Schultz, and Cathrin Schulz, acting in concert with one another, fraudulently transferred at least $4.8 million dollars to an account in the name of CIAMG.

111. Further, Ryan, Schultz, and Cathrin Schulz may have succeeded in transferring CIG leases and real estate assets into the name of, and control of, CIAMG.

112. Ryan, Schulz, Cathrin Schulz, and CIAMG presently hold funds, properties, and/or other assets taken directly from CIG's accounts and assets, all of which rightfully belong to CIG.

113. Upon information and belief, Ryan, Schulz, Cathrin Schulz and CIAMG have received, and continue to receive, benefits and profits rightfully belonging to CIG which have been, and are, derived from Defendants' wrongful conduct, but CIG and/or BAC are presently unable to fully ascertain the extent of same.

114. By reason of the wrongful manner by which Defendants obtained, and continue to obtain, possession of funds, properties and assets which rightfully belong to CIG, Defendants are involuntary trustees holding such funds, properties and assets, and any benefits and profits derived there

from, in constructive trust for the use and benefit of CIG, and with the duty to re-convey the same to them.

115.   CIG has no adequate remedy at law, and the imposition of a constructive trust or, alternatively, an equitable lien, is required to avoid the perpetration of Defendants' wrongful misconduct, to prevent the unjust enrichment of them, and to avoid irreparable injury to CIG.

116.   Accordingly, CIG seeks a constructive trust over all funds, real estate assets, leases, contracts, and other assets of any kind, whether tangible or intangible, that have been taken from CIG and are in the possession of Ryan, Schulz, Cathrin Schulz, CIAMG or any other entity of which Defendants have control.   A constructive trust is necessary to redress Defendants' wrongs and to prevent unjust enrichment.

## COUNT X – INTERLOCUTORY AND PERMANENT INJUNCTION
### (AGAINST ALL DEFENDANTS)

117.   CIG and BAC reallege and incorporate by reference each of the allegations made in this document.

118.   By virtue of Ryan, Cathrin Schulz, and Schulz conduct, CIG has suffered and will continue to suffer imminent and irreparable harm, because Ryan, Schulz, Cathrin Schulz and CIAMG have taken existing CIG

assets and property, as well as confidential CIG information, while Ryan and Schulz were still employed by CIG and BAC.

119.   Ryan and Schulz continue to attempt to transfer CIG assets to CIAMG in violation of their respective fiduciary duties and express.

120.   Further, Ryan and Schulz continue to hold themselves out as officers of CIG and/or BAC and to attempt to act under color of that spurious authority.

121.   CIG and BAC have no adequate remedy at law, as Ryan, Schulz and CIAMG will continue to hold themselves out as officers of CIG and/or BAC and attempt to transfer CIG assets and funds to CIAMG in violation of their fiduciary duties and their express and/or implied employment agreements without immediate intervention by the courts.

122.   Furthermore, there is no way to accurately measure the total amount of damages that CIG will ultimately suffer as a result of the fraudulent asset transfers, as Defendants could continue to attempt to transfer CIG assets to CIAMG well into the future.

123.   CIG has no adequate remedy at law regarding the use of CIG's confidential business and proprietary information.

124.   Accordingly, CIG requests the entry of an injunction against Ryan, Schulz, Cathrin Schulz and CIAMG, ordering them to: (1) to stop holding themselves out as officers of CIG and/or BAC or any related entities; (2) cease and desist all asset transfers from CIG to CIAMG of any kind, including but not limited to the transfer of funds, real estate assets, leases, contracts, and any other assets, whether tangible or intangible; (3) to stop representing themselves as having authority to execute such transfers; (4) return any and all documents taken from CIG, including but not limited to financial records, contracts, lease agreements, and real property records; (5) to return transferred funds; and (6) to return company vehicles, company business electronics, and other company-owned property to CIG and BAC. Additionally, CIG and BAC request an order allowing CIG and BAC to take expedited discovery to preserve evidence and protect confidential information, which is both warranted and necessary.

125.   Further, CIG and BAC have no knowledge of, nor access to, complete information demonstrating the extent of CIG assets taken by Ryan, Schulz, Cathrin Schulz and CIAMG, nor the extent of its own losses therefrom.   Thus, CIG requests that the Court order Ryan, Schulz, Cathrin

Schulz and CIAMG to produce any and all documents and electronic records that they may have with any connection to CIG and BAC assets.

## COUNT XI - ACCOUNTING
### (AGAINST ALL RYAN AND SCHULZ)

126.   CIG and BAC reallege and incorporate by reference each of the allegations made in this document.

127.   Ryan,  and Schulz have transferred or attempted to transfer, and converted or attempted to convert, various assets of CIG to CIAMG.  CIG and BAC have no knowledge of, nor access to, the full information demonstrating the extent of Ryan, Schulz and CIAMG's unjust enrichment of themselves nor the extent of the losses therefrom.

128.   CIG and BAC lack an adequate remedy at law.

129.   Accordingly, by reason of the foregoing, CIG and BAC are entitled to, *inter alia*: (a) an accounting of all funds, properties and other assets which have been transferred or converted to Ryan, Schulz and/or CIAMG, or which Defendants attempted to transfer or attempted to convert for the benefit of Ryan, Schulz and/or CIAMG, including without limitation, all benefits and profits derived there from; (b) the imposition of a constructive trust and/or equitable lien thereon in favor of CIG, with an order for conveyance to CIG for the rightful return of such property; and (c)

all documentation and records in the possession or control of Ryan, Schulz and/or CIAMG, or anyone acting in concert with them or at their direction or instruction, which pertain to such funds, properties and other assets belonging to CIG and/or BAC, and all benefits and profits derived therefrom, and an order for conveyance thereof to CIG and/or BAC.

## COUNT XII  - TROVER AND CONVERSION
### (AGAINST RYAN AND SCHULZ)

130.   CIG and BAC reallege and incorporate by reference each of the allegations made in this document.

131.   Ryan and Schulz transferred specific and identifiable amounts of money from CIG bank accounts to CIAMG bank accounts without permission or authority to do so.

132.   These specific and identifiable amounts of money are property of CIG, which has the right of possession.

133.   By virtue of Ryan and Schulz fraudulent transfers, CIAMG currently has possession of the specific and identifiable amounts of money.

134.   Ryan and/or Schulz possess certain company-owned vehicles and business electronics which are the property of CIG and/or BAC, and which Ryan and Schulz are no longer permitted to have since their termination as officers and/or managers of CIG and/or BAC.

135.   On numerous occasion, as documented by emails and other communications between the Plaintiffs and Defendants and their respective representatives, CIG and BAC have requested that Ryan, Schulz, and CIAMG return CIG's money and CIG or BAC's company vehicles and electronic business equipment.

136.   Ryan, Schulz, Cathrin Schulz and CIAMG refused, and continue to refuse, to return CIG's money and CIG or BAC's company vehicles and electronic business equipment.

137.   By virtue of Defendants' improper taking and retention of CIG and/or BAC's property, CIG and/or BAC have incurred, and continue to incur, damages.

## COUNT XIII – MONEY HAD AND RECEIVED
### (AGAINST RYAN, SCHULZ, AND CIAMG)

138.   CIG and BAC here reallege and incorporate by reference each of the allegations made in this document.

139.   Ryan and Schulz transferred specific and identifiable amounts of money from CIG bank accounts to CIAMG bank accounts without permission or authority to do so.

140.   CIAMG received this money and in equity and good conscious should not be permitted to keep it.

141.   On numerous occasions, as documented by emails between Ryan and CIG representatives, CIG has requested that Ryan, Schulz, and CIAMG return CIG's money.

142.   Ryan, Schulz, and CIAMG refused, and continue to refuse, to return CIG's money.

143.   By virtue of CIAMG's improper taking and retention of CIG's money, CIG has been, and continues, to incur damages.

## COUNT XIV - PARTICIPATORY LIABILITY – CONSPIRACY
### (AGAINST ALL DEFENDANTS)

144.   CIG and BAC here reallege and incorporate by reference each of the allegations made in this document.

145.   Acting in concert and combination with one another, Ryan, Schulz, Cathrin Schulz, and CIAMG, agreed to breach the fiduciary duties owed to CIG and BAC, defraud CIG and BAC, and steal, embezzle, and/or misappropriate millions of dollars of assets and funds.

146.   Defendants knew or should have known that any such agreed acts would harm CIG and/or BAC.

147.   To accomplish the object of their agreement, upon information and belief Defendants made numerous misrepresentations and/or proactively

concealed their activities of forming CIAMG and of transferring assets from CIG to CIAMG.

148.   Defendants' conduct has proximately caused injury to CIG and BAC.

## COUNT XV – TORTIOUS INTERFERENCE WITH CONTRACTUAL AND BUSINESS RELATIONS
### (AGAINST RYAN AND SCHULZ)

149.   CIG and BAC reallege and incorporate by reference each of the allegations made in this document.

150.   By virtue of Ryan and Schulz's conduct, CIG has suffered and will continue to suffer imminent and irreparable harm, because Ryan, Schulz and CIAMG have assigned or attempted to assign, convey, or transfer lease agreements entered into between CIG and third-parties, while Ryan and Schulz were still employed by CIG.

151.   The lease agreements entered into between CIG and third-parties were valid and enforceable contracts.

152.   Ryan, Schulz and CIAMG willfully and intentionally interfered with these contracts by assigning or attempting to assign them to CIAMG.

153.   As a result of Ryan, Schulz and CIAMG's conduct, CIG has incurred the loss of, or substantial interference in performing, its contracts.

154.   As a result of Ryan, Schulz and CIAMG's conduct, CIG has been and will continue to be damaged.

155.   CIAMG's conduct constitutes willful misconduct, malice, fraud, wantonness, oppression and/or conscious indifference to consequences.   Therefore, CIG is entitled to an award of punitive damages.

## COUNT XVI – TORTIOUS INTERFERENCE WITH CONTRACTUAL AND BUSINESS RELATIONS (AGAINST CIAMG)

156.   CIG and BAC reallege and incorporate by reference each of the allegations made in this document.

157.   By virtue of Ryan and Schulz's conduct, CIG has suffered and will continue to suffer imminent and irreparable harm, because Ryan, Schulz and CIAMG have taken existing CIG business clients by assigning or attempting to assign lease agreement from CIG to CIAMG, as well as confidential CIG information, while Ryan and Schulz were still employed by CIG.

158.   CIAMG had knowledge of Ryan and Schulz's express and/or implied employment agreements with CIG.

159.   CIAMG intentionally interfered with Ryan and Schulz's obligations and CIG's rights under the respective express and/or implied

employment agreements by causing Ryan and Schulz to solicit CIG's business customers and causing Ryan and Schulz to compete with CIG for the benefit of CIAMG.

160. As a result of CIAMG's conduct, Ryan and Schulz have breached their obligations to CIG, pursuant to their express and/or implied employment agreements.

161. As a result of CIAMG's conduct, CIG has been and will continue to be damaged.

162. CIAMG's conduct constitutes willful misconduct, malice, fraud, wantonness, oppression and/or conscious indifference to consequences. Therefore, CIG is entitled to an award of punitive damages.

## COUNT XVII – PUNITIVE DAMAGES
### (AGAINST ALL DEFENDANTS)

163. CIG and BAC reallege and incorporate by reference each of the allegations made in this document.

164. By the actions alleged herein, Ryan, Schulz, Cathrin Schulz, and CIAMG have shown willful misconduct, malice, fraud, wantonness, oppression and that entire want of care which would raise the presumption of conscious indifference to the consequences of their actions.

165.   As a direct result of the actions and conduct of Ryan, Schulz, Cathrin Schulz, and CIAMG, CIG is entitled to recover punitive or exemplary damages necessary to punish or deter said Defendants from such conduct in the future; said damages to be in an amount determined at trial by the enlightened conscious of the jury.

### COUNT XVIII – ATTORNEYS' FEES
### (AGAINST ALL DEFENDANTS)

166.   CIG and BAC reallege and incorporate by reference each of the allegations made in this document.

167.   As set forth with particularity above, Ryan, Schulz, Cathrin Schulz, and/or CIAMG have breached their contracts with CIG, misappropriated CIG's confidential and proprietary information, acted in bad faith, have been stubbornly litigious and have caused unnecessary expense and trouble to CIG.

168.   As a direct result of the actions and conduct of Ryan, Schulz, Cathrin Schulz, and/or CIAMG, CIG is entitled to recover from said Defendants the expenses of litigation in this action, including court and litigation costs and attorneys' fees, pursuant to O.C.G.A. §13-6-11 and other applicable law.

### COUNT XIX – ACTION TO QUIET TITLE

**(AGAINST RYAN, SCHULZ, AND CIAMG)**

169.   CIG and BAC reallege and incorporate by reference each of the allegations made in this document.

170.   Defendants unlawfully attempted to transfer title and/or assign leases to CIAMG or to another company or companies formed by or under the control of Ryan and/or Schulz.

171.   Such transfers and/or assignments have "cast a shadow" on CIG's right to use and enjoyment of such property by creating a "cloud" on the title.

172.   All such transfers were fraudulent and executed without authority from CIG and are, therefore, invalid an unenforceable.

173.   CIG and BAC request that the Court remove, annul, and hold for naught all clouds upon such properties by declaring all transfers, assignments, and conveyances to CIAMG invalid and unenforceable.

**COUNT XX – THEFT OF TRADE SECRETS**
**(AGAINST ALL DEFENDANTS)**

174.   CIG and BAC reallege and incorporate by reference each of the allegations made in this document.

175.   In the course of their work for CIG and BAC, Ryan, Schulz, Cathrin Schulz, and CIAMG have had access to CIG and BAC's

confidential information and data compilations, financial data, financial plans, and a lists of actual or potential properties, deals, customers or suppliers which is not commonly known by or available to the public and which information both derives economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use; and is the subject of efforts by CIG and BAC that are reasonable under the circumstances to maintain its secrecy.

176.  Ryan, Schulz, Cathrin Schulz, and CIAMG had a duty to maintain its secrecy but instead have misappropriated that confidential information and data by causing it to be copied for their use in a competing business or for unauthorized sale or use by CIG and BAC's competitors, including without limitation additional shell companies that Defendants may have set up or with whom they collude, and who know that its acquisition was by improper means.

177.  In these circumstances, CIG and BAC are entitled—and hereby request—to have the actual or threatened misappropriation of these trade secrets enjoined until such time as any commercial advantage that otherwise would be derived from its misappropriation shall have ceased to exist.

178.   CIG and BAC also seek issuance of an order by this court to preserve the secrecy of all the alleged trade secret by reasonable means, including granting protective orders in connection with discovery proceedings, holding in camera hearings, sealing the records of this action, and ordering any person involved in the litigation not to disclose an alleged trade secret without prior court approval.

179.   CIG and BAC are entitled to this relief under principles of law and equity including without limitation pursuant to O.C.G. §§ 10-1-761 *et seq*.

## **JURY DEMAND**

Plaintiffs hereby demand a trial by jury on all issues so triable.

## **PRAYER**

WHEREFORE, CIG and BAC pray for the following:

(a)  that judgment be entered in favor of CIG and BAC and against Ryan, Schulz, Cathrin Schulz, and CIAMG for compensatory damages, treble damages, and punitive damages plus interest, attorneys fees, expenses, and costs;

(b)  that CIG and BAC recover its expenses of litigation pursuant to O.C.G.A. § 13-6-11 and other applicable law;

(c)  that all costs of this action, including CIG and BAC's attorneys' fees and costs, be taxed against Ryan, Schulz, Cathrin Schulz, and CIAMG;

(d)  that CIG and BAC be awarded such interlocutory and permanent injunctive and equitable relief against Ryan, Schulz, Cathrin Schulz, and CIAMG as described herein; and

(e)  that this court award CIG and BAC such other and further legal and equitable relief as is just and proper under the circumstances.

Respectfully submitted, this 14th day of December, 2010.

BY:   /s/ Elizabeth J. Campbell
Brian T. Casey
Georgia Bar No. 115607
Elizabeth J. Campbell
Georgia Bar No. 349249
LOCKE LORD BISSELL & LIDDELL LLP
1170 Peachtree Street, N.E.
1900 The Proscenium
Atlanta, Georgia 30309
(404) 870-4600
(404) 872-5547 FAX

*Attorneys for Plaintiffs,*
*Communications Infrastructure*
*Group LLC and Berlin Atlantic*
*Capital US, LLC*